UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KEVIN SCOTT STOUDENMYER,[1]

                            Plaintiff,

            v.                                                      5:13-CV-619
                                                                         (FJS)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

**APPEARANCES**                                     **OF COUNSEL**

**LAW OFFICES OF STEVEN R. DOLSON**      **STEVEN R. DOLSON, ESQ.**
126 North Salina Street, Suite 3B
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**      **KATRINA M. LEDERER, ESQ.**
**OFFICE OF REGIONAL**
**GENERAL COUNSEL – REGION II**
26 Federal Plaza – Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

---

[1] The record is inconsistent as to the spelling of Plaintiff's name. Accordingly, the Court continues to follow the spelling on its docket, which it takes from Plaintiff's complaint. *See* Dkt. No. 1.

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Kevin Scott Stoudenmyer brought this action pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3) ("Act"), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying his application for Supplemental Security Income ("SSI"). *See generally* Dkt. Nos. 1, 10. Currently before the Court are the parties' cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 10, 12.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff filed an application for SSI on October 12, 2010, alleging disability beginning on January 1, 2008. *See* Administrative Record ("AR") at 145. The Social Security Administration denied Plaintiff's application on December 28, 2010. *See id.* at 60. Plaintiff filed a timely request for a hearing on January 24, 2011. *See id.* at 63. The hearing was held on January 3, 2012, before Administrative Law Judge Stanley K. Chin ("ALJ"). *See id.* at 10. Attorney Steven Dolson represented Plaintiff at the hearing. *See id.* On January 13, 2012, the ALJ issued an unfavorable decision. *See id.* at 46-55.

In his written decision, the ALJ made the following findings "[a]fter careful consideration of the entire record . . . ."

1) Plaintiff had not "engaged in substantial gainful activity since October 12, 2010, the application date."
2) Plaintiff "has had the following severe impairments: bulging disks with nerve impingement, depressive disorder, and panic disorder."
3) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."

4) "After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR [§] 416.967(a), except that the claimant could lift up to 10 pounds occasionally, stand/walk for about two hours, and sit for up to six hours in an eight-hour workday. He would be limited to occasional bilateral pushing and pulling. [Plaintiff] would also be limited to no climbing ladders/ropes/scaffolds, but he could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. He would need to avoid concentrated exposure to use of moving machinery and unprotected heights. In addition, [Plaintiff] would need work that would be limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple[] work related decisions, and routine work place changes. He would be limited to only occasional interaction with the public, co-workers, and supervisor."
5) "[Plaintiff] is unable to perform past relevant work."
6) Plaintiff "was born on November 11, 1974, and was 35 years old, which is defined as a younger individual age 18-44, on the date the application was filed."
7) Plaintiff "has a limited education and is able to communicate in English."
8) "Transferability of job skills is not an issue in this case because [Plaintiff's] past relevant work is unskilled."
9) "Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] could perform."
10) Plaintiff "has not been under a disability, as defined in the Social Security Act, since October 12, 2010, the date the application was filed."

*See* AR at 48-55 (citations omitted).

In support of his motion, Plaintiff advances two principal arguments. First, Plaintiff argues that the ALJ should have found that his impairments met or medically equaled the impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04. Second, Plaintiff argues that the ALJ erred in assessing his residual functioning capacity ("RFC") by not expressly discussing certain of his alleged limitations. *See generally* Dkt. No. 10, Pl.'s Br.

# III. DISCUSSION

## A. Standard of review

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). To be eligible for SSI, a claimant must show that he suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability to engage in substantial gainful activity ("SGA") by reason of a medically determinable physical or mental impairment that can be expected to cause death or last for twelve consecutive months. *See* 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is engaged in SGA. *See* 20 C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).
>
> 2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id*.
>
> 3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).
>
> 4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do his past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, he is not disabled. *See* 20 C.F.R. § 416.920(f).
>
> 5) If the claimant cannot perform his past relevant work, the ALJ determines if he can perform other work, in light of his RFC, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then he is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is

> only entitled to receive benefits if he cannot perform any
> alternative gainful activity. *See id*.

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step, if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (quotation omitted).

**B. ALJ's Listing 1.04 finding**

Under Listing 1.04, a claimant is presumptively disabled when he meets his burden of showing that he suffers from a disorder of the spine resulting in the compromise of a nerve root or the spinal cord, together with one of the following:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in [Listing] 1.00B2b.

*See* Listing 1.04.

In this case, Plaintiff argues that "[t]here is substantial evidence in the record" that Plaintiff meets Listing 1.04. *See* Dkt. No. 10, Pl.'s Br., at 9. In particular, he argues that "there is evidence" that his impairment resulted in nerve root compression, that he suffered from reduced range of motion of the spine and decreased sensation in the left lower extremity, and that he had positive straight-leg raising tests. *See id.* at 9-10. Indeed, the record does indicate an

MRI on April 7, 2010, showing a diffuse annular disc bulge at L5-S1 which may have been abutting the left extraforaminal L5 nerve root. *See* AR at 214. However, this test made no mention of a compromised nerve root as required by Listing 1.04. Similarly, it appears that no other evaluator concluded that Plaintiff suffered from a compromised nerve root. Thus, the ALJ's explanation that "[n]o treating, examining, or consulting physician has noted findings or opined that the severity of [Plaintiff's] impairments meets or equals a listed impairment," *see* AR at 48, was consistent with the record. Accordingly, the Court finds that the ALJ was justified in relying on what the record does not say in this instance. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983). For the same reason, the Court finds that the ALJ did not err in declining to further explain this finding. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (instructing that "'[a]n ALJ does not have to state on the record every reason justifying a decision'" (quoting *Brault [v. Soc. Sec. Admin., Comm'r]*, 683 F.3d [443,] 448 [(2d Cir. 2012)]). For these reasons, the Court finds that there was substantial evidence in the record to support the ALJ's finding that Plaintiff's impairments did not meet or medically equal Listing 1.04. *See Richardson*, 402 U.S. at 401.

**C. ALJ's RFC analysis**

Between steps three and four of the disability analysis, the ALJ must determine the claimant's residual functioning capacity ("RFC"), which is defined as "the most you can still do [in a work setting] despite your limitations." 20 C.F.R. § 416.945(a)(1); *see also* 20 C.F.R. § 416.920(e). The RFC analysis considers "all of your medically determinable impairments of which we are aware," even if they are not severe. 20 C.F.R. § 416.945(a)(2). The ALJ is to

consider "all of the relevant medical and other evidence" in assessing RFC. 20 C.F.R. § 416.945(a)(3).

When a claimant makes subjective allegations of symptoms limiting his ability to function, the regulations provide that

> [y]our symptoms, such as pain . . . will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present . . . which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.

20 C.F.R. § 416.929(b); *see also* 20 C.F.R. § 404.1529(b). Accordingly, the Social Security Administration has adopted a two-step standard for assessing a claimant's credibility. *See* Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, *2 (July 2, 1996); *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010).

> First, the ALJ must determine whether the claimant suffers from a "medically determinable impairment[ ] that could reasonably be expected to produce" the pain alleged. . . . Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry. . . .

*Meadors*, 370 F. App'x at 183 (internal quotation, citations and footnote omitted).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. *See* AR at 53. He then found Plaintiff's "statements concerning the intensity, persisting[,] and limiting effects of these symptoms are not credible " because "they are not supported by medical findings and they are contradicted by medical doctors . . and [Plaintiff's] own activities." *See id.* Additionally, the ALJ supported his RFC finding with a thorough discussion of Plaintiff's medical evidence, including those areas which Plaintiff argues he failed to assess properly. *See id.* at 50-54.

With respect to Plaintiff's alleged need for a sit/stand option, the Social Security Administration provides that, where the need for such option "cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded." SSR 96-9p, 1996 WL 374185, *7 (July 2, 1996). In this case, Plaintiff argues that his back impairment "could reasonably cause" a need for a sit/stand option beyond what is available with normal break times. *See* Dkt. No. 10, Pl.'s Br., at 6. He supports this argument solely with his own testimony that he can only sit for "about half an hour before needing to stand and stretch." *See id.* at 11. However, as noted, the ALJ found Plaintiff's testimony not to be credible. *See* AR at 53. In particular, the ALJ noted that Plaintiff walks two miles a day, *see id.* at 51, and that Dr. VanHusen, Plaintiff's treating physician, "indicated that [Plaintiff's] plow and moving service appeared to be causing most of [Plaintiff's] discomfort," *see id.* at 53. Accordingly, the Court finds that there was substantial evidence in the record to support this finding and that the ALJ did not err in this portion of the RFC analysis.

With respect to loss of use of the hands, the regulations provide that, "[a]ny *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." SSR 96-9p, 1996 WL 374185, at *8. In this case, Plaintiff argues that numbness and tingling in his hands "is reasonable" based upon his reading of the medical evidence. *See* Dkt. No. 10, Pl.'s Br., at 7. The ALJ considered Plaintiff's testimony that problems in his neck cause him to lose feelings in his hands, which causes him to drop things. *See* AR at 50. However, the ALJ also noted that Plaintiff was found to have "five out of five strength in his upper and lower extremities and grip" and that his "hand finger dexterity was also intact." *See id.* at 52. Accordingly, the Court finds

that there was substantial evidence in the record to support this finding and that the ALJ did not err in this portion of the RFC analysis.

With respect to a claimant's use of a cane, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . . The adjudicator must always consider the particular facts of a case." SSR 96-9p, 1996 WL 374185, at *7. In this case, the ALJ noted that Plaintiff bought his own cane for walking, but that it was not prescribed by a doctor. *See* AR at 50. The ALJ further noted that consultative examiner Dr. Shirley-Williams concluded that Plaintiff's cane was medically necessary. *See id.* at 52 (citing AR at 306-309). The ALJ concluded that Dr. Shirley-William's opinion evidenced "moderate limitations for prolonged walking." *See id.* at 53. Accordingly, the Court finds that there was substantial evidence in the record to support this finding and that the ALJ did not err in this portion of RFC analysis.

In sum, to the extent that Plaintiff points to evidence in the Administrative Record that reasonably might support a different conclusion in his favor, "whether there is substantial evidence supporting the appellant's view is not the question" on appeal. *Bonet*, 523 F. App'x at 59. Moreover, to the extent that the ALJ's RFC analysis failed to make express findings with respect to Plaintiff's medically determinable impairments, such lack of explanation does not constitute legal error where, as here, the ALJ clearly considered much of the evidence that Plaintiff argues he ignored. *See id.* For these reasons, the Court finds that substantial evidence supports the ALJ's findings in his RFC analysis and that he applied the appropriate legal standards. *See Richardson*, 402 U.S. at 401.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No 10, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 12, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 15, 2016
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge